**IN THE UNITED STATES DISTRICT COURT**
**FOR THE DISTRICT OF MARYLAND**

RONALD CARTER                                    :

    Plaintiff                                    :

    v                                            :                    Civil Action No. JFM-06-2227

ZERBRUCH TEWELDE, *et al*.                       :

    Defendants                                   :

o0o

**<u>MEMORANDUM</u>**

Pending in the above-captioned civil rights case are defendants' motions to dismiss or for

summary judgment.  Papers No. 10 and 12.  Plaintiff filed an opposition to the motions which was

docketed as correspondence.[1]  Paper No. 16.  Upon review of the papers filed, the court finds a

hearing in this matter unnecessary. *See* Local Rule 105.6 (D. Md. 2004).  For the reasons that follow,

the motions to dismiss or for summary judgment, construed as motions for summary judgment, will

be granted.

Background

Plaintiff, an inmate at Maryland Correctional Adjustment Center (MCAC), claims that on

August 9, 2006, he had a seizure while confined to his cell. Paper No. 1 at pp. 4– 5.  He alleges that

a nurse came to his cell, took his vital signs, and gave him Tylenol for his headache but did not call

a doctor. *Id.*  Plaintiff claims he had another seizure later the same night (11:30 p.m.), during which

he fell out of bed and hit his head on the floor. *Id*.  He admits the nurse returned to his cell, but

claims the nurse again refused to call the doctor about his condition. *Id*.  He alleges that he had three

more seizures at 12:45 a.m.; 5:25 a.m. and 8:30 a.m., on August 10, 2006.  *Id*.  During the last

---

[1] The Clerk shall amend the docket to reflect that Paper No. 16 is construed as an opposition to
defendants' dispositvie motions.

seizure, plaintiff states he was taken to the medical unit where he had yet another seizure and the doctor was finally notified. *Id.* Plaintiff was sent to a hospital emergency room where he received 1,300 mg of Dilantin to control his seizures. *Id.*

Plaintiff claims that his frequent seizures are not properly addressed by medical or correctional staff and endanger his life. *Id.* He states that although he has required hospitalization on two occasions for his seizures, he was not put in the prison infirmary for observation. *Id.* As relief, plaintiff seeks monetary damages. *Id.*

Standard of Review

A motion for summary judgment will be granted only if there exists no genuine issue as to any material fact and the moving party is entitled to judgment as a matter of law. *See* Fed. R. Civ. P. 56(c); *Anderson v. Liberty Lobby, Inc.*, 477 U.S. 242, 250 (1986); *Celotex Corp. v. Catrett*, 477 U.S. 317, 322 (1986). In other words, if there clearly exist factual issues "that properly can be resolved only by a finder of fact because they may reasonably be resolved in favor of either party," then summary judgment is inappropriate. *Anderson*, 477 U.S. at 250; *see also Pulliam Inv. Co. v. Cameo Properties*, 810 F.2d 1282, 1286 (4th Cir. 1987); *Morrison v. Nissan Motor Co.*, 601 F.2d 139, 141 (4th Cir. 1979); *Stevens v. Howard D. Johnson Co.*, 181 F.2d 390, 394 (4th Cir. 1950). The moving party bears the burden of showing that there is no genuine issue of material fact. *See* Fed. R. Civ. P. 56(c); *Pulliam*, 810 F.2d at 1286 (citing *Charbonnages de France v. Smith*, 597 F.2d 406, 414 (4th Cir. 1979)).

When ruling on a motion for summary judgment, the court must draw all reasonable inferences in favor of and construe the facts in the light most favorable to the non-moving party. *See Tinsley v. First Union Nat'l Bank*, 155 F.3d 435, 437 (4th Cir. 1998). A party who bears the

202b5c9b9e25f3ee

burden of proof on a particular claim must factually support each element of his or her claim.  "[A]

complete failure of proof concerning an essential element . . . necessarily renders all other  facts

immaterial."  *Celotex*, 477 U.S. at 323.  Thus, on those issues on which the nonmoving party will

have the burden of proof, it is his or her responsibility to confront the motion for summary judgment

with an affidavit or other similar evidence.  *Anderson*, 477 U.S. at 256.

In *Celotex*, the Supreme Court stated:

> In cases like the instant one, where the nonmoving party will bear the
> burden of proof at trial on a dispositive issue, a summary judgment
> motion may properly be made in reliance solely on the "pleadings,
> depositions, answers to interrogatories, and admissions on file."
> Such a motion, whether or not accompanied by affidavits, will be
> "made and supported as provided in this rule," and Rule 56(e)
> therefore requires the nonmoving party to go beyond the pleadings
> and by her own affidavits, or by the "depositions, answers to
> interrogatories, and admissions on file," designate "specific facts
> showing that there is a genuine issue for trial."

*Celotex*, 477 U.S. at 324.  However, "'a mere scintilla of evidence is not enough to create a fact

issue.'"   *Barwick v. Celotex Corp.*, 736 F.2d 946, 958-59 (4th Cir. 1984) (quoting *Seago v. North*

*Carolina Theatres, Inc.*, 42 F.R.D. 627, 632 (E.D.N.C. 1966), *aff'd*, 388 F.2d 987 (4th Cir. 1967)).

There must be "sufficient evidence favoring the nonmoving party for a jury to return a verdict for

that party.  If the evidence is merely colorable, or is not significantly probative, summary judgment

may be granted."  *Anderson*, 477 U.S. at 249-50 (citations omitted).

Analysis

In order to state an Eighth Amendment constitutional claim for denial of medical care,

plaintiff must demonstrate that defendants' acts (or failures to act) amounted to deliberate

indifference to his serious medical needs.  *See Estelle v. Gamble*, 429 U.S. 97, 106 (1976).  In

essence, the treatment rendered must be so grossly incompetent, inadequate, or excessive as to

shock the conscience or to be intolerable to fundamental fairness. *See Miltier v. Beorn*, 896 F.2d

848, 851 (4th Cir. 1990) (citation omitted).  "Deliberate indifference may be demonstrated by either

actual intent or reckless disregard." *Miltier*, 896 F.2d at 851.  Reckless disregard occurs when a

defendant "knows of and disregard an excessive risk to inmate health or safety; the [defendant] must

both be aware of facts from which the inference could be drawn that a substantial risk of serious

harm exists and he must also draw the inference." *Farmer v. Brennan*, 511 U. S. 825, 837 (1994).

Thus, a health care provider must have actual knowledge of a serious condition, not just knowledge

of the symptoms.  *See Johnson v. Quinones*, 145 F.3d 164, 168 (4th Cir. 1998).  Furthermore, mere

negligence or malpractice does not rise to a constitutional level.  *See Russell v. Sheffer*, 528 F.2d

318, 319 (4th Cir. 1975); *Donlan v. Smith*, 662 F. Supp. 352, 361 (D. Md. 1986).

"'[B]ecause society does not expect that prisoners will have unqualified access to health care,'

the objective component of an Eighth Amendment claim based on deprivation of medical attention

is satisfied only if the medical need of the prisoner is 'serious.'" *Shakka v. Smith*, 71 F.3d 162, 166

(4th Cir. 1995) (quoting *Hudson v. McMillian*, 503 U. S. 1, 9 (1992)).  "[A]n injury or condition is

'serious' only if it is 'life threatening or poses a risk of needless pain or lingering disability if not

treated at once.'" *Anderson-El v. O'Keefe*, 897 F. Supp. 1093, 1096 (N.D. Ill. 1995) (quoting *Davis

v. Jones*, 936 F.2d 971, 972 (7th Cir. 1991)).  In determining whether an alleged deprivation of

medical care amounts to a constitutional violation, courts must consider the severity of the medical

problem, the potential for harm if medical care was denied or delayed, and whether such harm

actually resulted from the lack of medical attention. *See Burns v. Head Jailor of LaSalle County*, 576

F. Supp. 618, 620 (D. N. Ill. 1984) (citation omitted).

To the extent that plaintiff's allegations can be construed as implicating defendants Dotson

and Crowder,[2] they are based solely upon vicarious liability, otherwise known as the doctrine of *respondeat superior*.   The law in the Fourth Circuit is well established that the doctrine of *respondeat superior* does not apply in §1983 claims. *See Nedd v. Correctional Medical Services*, Civil Action No. JFM-92-1524 (D. Md., October 22, 1992), *citing Powell v. Shopco Laurel Co.*, 678 F.2d 504, 506 (4th Cir. 1982); *McIlwain v. Prince William Hospital*, 774 F. Supp. 986, 990 (E. D.Va. 1991).  There is no evidence that Warden Dotson and Chief of Security Crowder participated in any decision effecting plaintiff's medical care, and thus, they will be dismissed from this lawsuit.

The remaining defendant, Dr. Tewelde, has submitted medical records as well as an affidavit as evidence that medical staff have been responsive to plaintiff.  Paper No. 10 at Ex. A and B.  On August 8, 2006,[3] medical personnel responded to a 9:30 p.m. report from correctional staff that plaintiff was having a seizure.  *Id*. at Ex. B, p. 2.  Upon arriving at the housing unit, Nurse Nwaiwu found plaintiff lying on the floor and noted that plaintiff was lethargic but oriented to his name and place, had not lost consciousness and was not incontinent.  *Id*.  Plaintiff was assisted to his bed and provided with a helmet to wear to protect his head in the event he had another seizure.  *Id*.  Plaintiff was advised to keep the helmet on his head, objects that could cause injury during a seizure were removed from his cell, and correctional personnel were instructed to observe plaintiff closely for further seizures during the night.  *Id*.

At 11:50 p.m. on the same day, another call to Nwaiwu informed him that plaintiff had suffered another seizure.  *Id*. at Ex. B, pp. 1– 2.  Nwaiwu responded to the housing unit to see plaintiff walking around in his cell.  *Id*. at Ex. A, p. 3.  Nwaiwu checked plaintiff's vital signs, gave

---

[2] There are no allegations in the complaint directly implicating Dotson or Crowder.

[3] Plaintiff asserts his seizures occurred on August 9 and 10, 2006.  It appears, however, that  the incidents he describes actually occurred on August 8 and 9, 2006.  Paper No. 10 at Ex. B, pp. 1– 17.

him Tylenol in response to his complaint of pain, and advised him to wear his helmet.  *Id*.

On August 9, 2006, at 5:25 a.m., another report was received that plaintiff had seized. Plaintiff was brought to the Metropolitan Transition Center Dispensary where he was seen walking on his own with a steady gait, speaking clearly and exhibiting no signs of recent seizure activity. *Id*.  Plaintiff was released to his housing unit and advised to comply with medications and to wear his helmet.   *Id*.   Later that morning, at 8:35 a.m., Plaintiff was brought to the dispensary again because he reportedly lost consciousness while exercising in the prison courtyard.  Dr. Tewelde was notified of the incident and had plaintiff brought to the nurse's station for observation.  Before Dr. Tewelde could see plaintiff, he had yet another seizure.  *Id*. at pp. 4– 5.  When this was reported to Dr. Tewelde by Nwaiwu, an additional 200 mg dose of Dilantin was prescribed and promptly administered.   *Id*. at p. 5; Ex. B, pp. 4 and 14.

In light of plaintiff's increase in seizure activity, he was sent to the University of Maryland Medical Center (UMMC) on an emergency basis for evaluation.   *Id*. at Ex. A, pp. 5– 6; Ex. B, pp. 6– 10.  The decision to send plaintiff to the hospital was made despite the fact that many of his seizures were not witnessed and he did not present symptoms of having had seizures after the reported episodes.  *Id*.  Dr. Tewelde noted, however, that plaintiff's seizure activity had increased.  *Id*.  Plaintiff has a history of  non-compliance with the medication prescribed for his seizures.  *Id* at Ex. A, p. 5.  Blood work performed at UMMC indicated that Dilantin and phenobarbital levels were below therapeutically acceptable levels.  *Id*. at p. 6.  Plaintiff was given one gram of Dilantin to correct the deficiency.  *Id.*  In addition, a CT scan was performed and revealed no abnormalities contributing to increased seizure activity or injuries resulting therefrom.  On August 10, 2006, Plaintiff was screened by prison medical staff after being discharged from the hospital.  He was sent

6

to his housing unit and advised to comply with medication, wear his helmet and, if he felt a seizure coming on, to lay down on the floor on his side. *Id.*

Plaintiff responded to defendants' motion to dismiss or for summary judgment, pointing out that he is not observed on an hourly basis when he has a seizure, and claiming that when correctional staff call for medical help he is required to wait for hours. Paper No. 16. He states that he does not "play games" with his medical condition and that each seizure he has causes him pain and suffering. *Id.* He does not deny that he fails to take his medication on a regular basis, or that the medical care described by defendants was provided.

There is no evidence that plaintiff's serious medical condition has been ignored by defendants. Indeed, plaintiff has been provided medical attention each time he is either seen having a seizure or he reports having had a seizure. Medications have been prescribed, but plaintiff's non-compliance has decreased the effectiveness of those medications. Furthermore, he has received diagnostic tests at a university hospital in an attempt to uncover reasons for his increase in seizure activity. There is no evidence that plaintiff's seizures are the result of defendants' deliberate indifference to a serious medical need. The absence of hourly monitoring or delays in medical attention after a seizure has occurred do not constitute deliberate indifference under the facts presented here. Accordingly, defendant's motion for summary judgment will be granted by separate order which follows.

April 24, 2007                                              /s/
Date                                                       J. Frederick Motz
                                                           United States District Judge